IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | Bankruptcy No. 12-23966-CMB |
| ) | |
| **KARIN LYNN TABORSKI,** ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |
| **UNITED STATES TRUSTEE,** ) | Doc. No. 14 |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| **KARIN LYNN TABORSKI,** ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

The matter before the Court is the Motion of United States Trustee to Dismiss Pursuant to 11 U.S.C. §707(b)(2) and (b)(3) the above-captioned bankruptcy case ("Motion to Dismiss").[1] The United States Trustee ("UST") contends that the Debtor's Amended Statement of Current Monthly Income and Means-Test Calculation contains material errors which, once corrected, result in a presumption of abuse under §707(b)(2). In the alternative, if the Court were to find that the presumption of abuse does not arise under §707(b)(2), the UST contends that the totality of the circumstances demonstrates an abuse of chapter 7 under §707(b)(3). Accordingly, the UST

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(A), and the Court will enter final judgment. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

1

seeks dismissal of the case pursuant to §707(b)(1) on either basis. The Debtor filed a response, denying that a presumption of abuse results from the means test calculation and further contending that dismissal under the totality of the circumstances analysis is not warranted. For the reasons set forth herein, this Court finds that the means test results in a presumption of abuse which has not been rebutted by the Debtor. Accordingly, the case is dismissed pursuant to §707(b)(1), (2) unless the Debtor timely converts her case.[2]

**I.      Background**

On August 8, 2012, the Debtor filed for relief under chapter 7 of the Bankruptcy Code. Along with her bankruptcy petition, the Debtor filed her Chapter 7 Statement of Current Monthly Income and Means-Test Calculation using Official Form 22A. The form is used to determine whether a chapter 7 case is presumptively abusive pursuant to §707(b)(2) based upon a debtor's income and certain expenses. On September 13, 2012, Debtor filed an amended version of the form ("Amended Form 22A"). Although Amended Form 22A reflects what Debtor contends are her relevant income and expenses for purposes of §707(b)(2), the UST filed the instant Motion to Dismiss, alleging material errors in the Debtor's Amended Form 22A. The UST contends that certain items were improperly excluded from income while others were improperly deducted as expenses. The Debtor filed a response rejecting any material changes to Amended Form 22A and contending that a presumption of abuse does not arise in this case. Each party filed a pretrial statement and this Court heard argument on January 7, 2013. The matter is now ripe for decision.

---

[2] The Court does not address the issue of whether dismissal is also appropriate under the totality of the circumstances analysis set forth in §707(b)(3) as the matter is resolved under §707(b)(2).

2

**II.     Facts**

Although the exclusion of certain income and inclusion of certain expenses on Amended Form 22A are challenged by the UST, the relevant facts are undisputed as follows:

1) The Debtor received a bonus in the amount of approximately $6,340 in July 2012, i.e., within the six months prepetition.

2) The Debtor receives child support payments of approximately $812 per month.[3]

3) During the six months prior to filing her bankruptcy petition, the Debtor made payments to the Internal Revenue Service on delinquent taxes owed by the Debtor and her former spouse. However, as of the petition date, the prepetition tax liability was satisfied and thus no continuing payments are necessary with respect thereto.

Based upon these facts, the Court turns to the legal issues in dispute.

**III.    Conclusions of Law**

The issues before the Court involve provisions of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), which was enacted in response to perceived abuses of the bankruptcy system. *See Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 721 (2011).

> In particular, Congress adopted the means test—"[t]he heart of [BAPCPA's] consumer bankruptcy reforms," H.R.Rep. No. 109–31, pt. 1, p. 2 (2005) . . . , and the home of the statutory language at issue here—to help ensure that debtors who *can* pay creditors *do* pay them. See*, e.g., ibid*. (under BAPCPA, "debtors [will] repay creditors the maximum they can afford").

---

[3] According to the Motion to Dismiss, "the Debtor testified that her child support payment had been temporarily reduced to $662.00 monthly to correct for an overpayment. However, the payment will return to $812.00 in 2013." Motion to Dismiss, Doc. No. 14, at 6, note 8.

3

*Id.* As set forth in §707(b)(1), when a court finds that granting relief under chapter 7 would constitute an abuse of the provisions of the chapter, a court may dismiss a case or, with the debtor's consent, convert a case to a case under chapter 11 or 13. A presumption of abuse arises when a debtor fails the means test, i.e., the complex calculation described in §707(b)(2). A debtor completes the means test calculation using Official Form 22A. Pursuant to §707(b)(2) and (7), for a debtor whose income is above the applicable state median income, a presumption of abuse arises if the debtor's current monthly income reduced by certain allowed deductions is more than a particular amount. In order to rebut the presumption, a debtor must demonstrate special circumstances as set forth in §707(b)(2)(B). With this framework in mind, the Court addresses the instant Motion to Dismiss.

The parties' calculations yield different results as to whether a presumption of abuse arises in this case. In particular, the parties disagree as to the following items set forth in the Official Form:

(1) Whether the Debtor's bonus payment must be included as "[g]ross wages, salary, tips, bonuses, overtime, commissions" in Line 3.

(2) Whether the child support payments received by the Debtor must be included in Line 8 as "[a]ny amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose."

(3) Whether the Debtor may include certain prepetition payments made on a delinquent tax liability on Line 25 for "Other Necessary Expenses: taxes."

The Court will address each in turn.[4]

Line 3 – Bonus Payment

In response to the Motion to Dismiss, the Debtor contends that she is not required to include the bonus payment that she received in calculating her income on Line 3 of Form 22A. As stated above, the bonus was paid to the Debtor within the six month period prior to filing her bankruptcy petition. The Debtor contends that the bonus should not be considered in the means test calculation as it is discretionary and entirely dependent upon her employer.

The Court's analysis begins with the language of §707. Pursuant to §707(b)(2)(A)(i), the means test calculation requires a determination of a debtor's current monthly income, which is defined as follows:

> The term "current monthly income"--
> (A) means the average monthly income <u>from all sources</u> that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of

---

[4] The Court notes that the parties also briefed the issue of whether a debtor may exclude voluntary retirement contributions from the calculation of income. It was not identified where in Amended Form 22A the Debtor excluded voluntary retirement contributions from her calculation of income. Rather, it appears the issue was raised for purposes of §707(b)(3). Therefore, the issue need not be addressed herein as this Court resolves this matter under §707(b)(2).

5

> war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

*See* 11 U.S.C. §101(10A) (emphasis added). The statute broadly defines "current monthly income" and there is no basis contained within the statute to exclude income that the Debtor received as a bonus. Furthermore, the description of the amount to be listed on Line 3 of Form 22A is "Gross wages, salary, tips, bonuses, overtime, commissions." Fed.R.Bankr.P. 1007(b)(4) provides,

> [A]n individual debtor in a chapter 7 case shall file a statement of current monthly income prepared as prescribed by the appropriate Official Form, and, if the current monthly income exceeds the median family income for the applicable state and household size, the information, including calculations, required by §707(b), prepared as prescribed by the appropriate Official Form.

The Federal Rules of Bankruptcy Procedure further direct that "[t]he forms shall be construed to be consistent with these rules and the Code." Fed.R.Bankr.P. 9009. Bonuses are explicitly included in the amount to be listed in the Official Form, and this Court finds that inclusion of bonus payments in the means test calculation is consistent with the breadth of the Bankruptcy Code's definition of "current monthly income."

To the extent the Debtor relies upon the reasoning expressed in *In re King*, 308 B.R. 522 (Bankr.D.Kan.2004), as a basis to exclude the bonus from the Debtor's income, *King* was decided before the enactment of BAPCPA. Thus, *King* does not consider the definition of "current monthly income" as defined by §101(10A) nor does it address the means test.

Therefore, *King* is not persuasive authority on this issue, and this Court finds the bonus must be included in Line 3 of the Debtor's income calculation.[5]

Line 8 – Child Support Payments

The Debtor did not identify any income in Line 8 of her Amended Form 22A, which provides for "[a]ny amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose." The UST contends that the child support payments received by the Debtor should be identified in Line 8 and that failure to include said payments is a material error affecting the means test calculation.

The Code's broad definition of "current monthly income," the Federal Rules of Bankruptcy Procedure, and the Official Form lead this Court to conclude that the child support payments must be included in the calculation under §707. Line 8 of Form 22A provides the following instruction as to the amount to be listed: "Any amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose." (Emphasis added.) Therefore, the Official Form clearly requires inclusion of child support paid on a regular basis for the household expenses of

---

[5] Although it is the Debtor's position that the bonus need not be included in Line 3, the Debtor nonetheless included the bonus income in the amount stated on Line 3 of her Amended Form 22A. The Court notes that the parties' amounts on Line 3 differ by approximately $33 despite the fact that both include the bonus payment. The Court was not provided with sufficient evidence in support of the respective calculations and therefore cannot determine which is correct. Nonetheless, based upon the conclusions made herein as to what amounts are appropriately included in the means test calculation, the difference of $33 does not materially affect the result.

the debtor's dependent. This directive is consistent with the Code's broad definition of "current monthly income."

The Debtor's argument to the contrary relies upon 11 U.S.C. §1325(b)(2), which provides as follows:

> <u>For purposes of this subsection</u>, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended . . . ."

*See* 11 U.S.C. §1325(b)(2) (emphasis added). Accordingly, the Debtor contends that including the child support payments in the means test calculation under chapter 7 is inconsistent with the hypothetical chapter 13 analysis, as said payments are specifically excluded from the determination of disposable income for chapter 13 plan confirmation. The Debtor contends that the result of including the child support payments is illogical as inclusion indicates the ability to fund a chapter 13 plan when those funds would not be required to fund a plan under §1325.

The Debtor's reliance on §1325 is misplaced. Section 1325 governs confirmation of a chapter 13 plan, and the Debtor cites to no provision which makes the section applicable to the means test calculation under §707. In fact, by its own terms, §1325(b)(2) limits its application to that subsection. The Court finds no basis for reading into §707(b)(2) an exclusion which was explicitly stated in, and limited to, §1325(b)(2). The Debtor cites to no case law in support of her position. The Court concludes that the Debtor must include her child support payments in the calculation.

Line 25 – Payments on Delinquent Tax Liability

The final point of contention between the parties is the appropriate amount to be included on Line 25 for "Other Necessary Expenses: taxes." Section 707(b)(2)(A)(ii)(I) provides, in pertinent part, as follows:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

Thus, the Code permits the deduction of expenses under the category of Other Necessary Expenses to be those that are deemed as such by the Internal Revenue Service ("IRS").

It is the Debtor's position that payments made on delinquent tax liability within the six months preceding the bankruptcy case are properly included in Line 25 as the Internal Revenue Manual specifically allows payments actually made on delinquent tax liability to be considered under the category of "Other Necessary Expenses." The UST does not contest that the Debtor made the prepetition payments, and the parties further agree that the payments are not ongoing as the delinquent tax liability was satisfied prepetition. The point of contention is whether these payments are properly included in the calculation of "the debtor's actual monthly expenses"

9

pursuant to the Code and, by reference, the standards of the IRS when the payments are no longer owed and the debt was extinguished prepetition.[6]

In support of the position that the Debtor is only entitled to deduct the actual tax expense that the Debtor will incur, the UST cites to cases which hold that a debtor may only deduct actual tax liability as opposed to the amounts withheld. *See In re Rudnik*, 435 B.R. 613 (Bankr.D.Minn.2010); *In re Hale,* No. 07-32744, 2007 WL 2990760, 2007 Bankr. LEXIS 3516 (Bankr.N.D.Ohio Oct. 10, 2007). The UST also directs this Court's attention to *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716 (2011), in which the Supreme Court held that a debtor was not permitted to deduct a standardized vehicle ownership expense when the debtor did not make loan or lease payments and thus did not actually incur the expense. Although not directly on point, the case law is persuasive.

The Debtor's sole support for her position is the Internal Revenue Manual's inclusion of payments made on tax liabilities within the category of Other Necessary Expenses. The Debtor's argument, however, makes no distinction between ongoing tax liabilities and tax liabilities which have been satisfied. After reviewing the portion of the Internal Revenue Manual submitted by the Debtor, the Court finds that the citation to the manual does not support the Debtor's position. *See*

---

[6] Although the issue was not raised by the parties, the Court notes the following sentence contained within §707(b)(2)(A)(ii)(I): "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." Thus, a debtor's allowed deductions for Other Necessary Expenses as issued by the Internal Revenue Service seem to be qualified. *See In re Knight*, 370 B.R. 429, 436-37 (Bankr.N.D.Ga.2007)(noting that, although the IRS includes student loans as one of several Other Necessary Expenses, such payments constitute payments for debts which are expressly excluded by §707(b)(2)(A)(ii)(I)). Whether this sentence should in fact be applied as an across-the-board exclusion of debt payments from all allowed deductions listed in the subsection has not been resolved. *See Ransom*, 131 S.Ct. at 728-29. This Court need not resolve the issue as the deduction is otherwise properly excluded on the grounds asserted by the UST.

Revised Addendum I, Doc. No. 22. In fact, the language appears to undermine the Debtor's argument by including payments for delinquent state and local tax liabilities only in certain circumstances, one of which is "[w]hen a taxpayer does not have the ability to full pay the tax liability." This factor suggests that the IRS considers delinquent taxes actually owed at the time of review. The Debtor cites to no case law in support of her argument, and her position is inconsistent with the language and purpose of §707. The means test is designed "to help ensure that debtors who *can* pay creditors *do* pay them." *Ransom*, 131 S.Ct. at 721.

In *Ransom,* a creditor objected to confirmation of the debtor's chapter 13 plan on the basis that the plan did not dedicate all of the debtor's disposable income to creditors. The issue in *Ransom* was whether a debtor who owns his vehicle free of any debt, and therefore does not make loan or lease payments thereon, may nevertheless claim the standardized deduction for vehicle-ownership costs. *Id.* at 723. Section 1325(b)(2) defines disposable income for purposes of chapter 13, and §1325(b)(3) directs a debtor to calculate reasonably necessary expenses pursuant to §707(b)(2). Thus, resolution of the meaning of §707(b)(2)(A)(ii)(I) was necessary. The Supreme Court's decision focused on the meaning of the word "applicable" in §707(b)(2)(A)(ii)(I) and held that a debtor is not entitled to claim all expense amounts listed in the National and Local Standards but rather only those applicable to the particular debtor. *Id.* at 724. The Court concluded that "[r]equiring a debtor to incur the kind of expenses for which he claims a means-test deduction thus advances BAPCPA's objectives." *Id.* at 725. The fact that the word "applicable" is used to characterize the monthly expense amounts under the National Standards and Local Standards and the word "actual" is used to characterize Other Necessary Expenses does not change the result. The Supreme Court addressed the issue in *Ransom*:

> Our interpretation of the statute, however, equally avoids conflating "applicable" with "actual" costs. Although the expense amounts in the Standards apply only if

11

> the debtor incurs the relevant expense, the debtor's out-of-pocket cost may well not control the amount of the deduction. If a debtor's actual expenses exceed the amounts listed in the tables, for example, the debtor may claim an allowance only for the specified sum, rather than for his real expenditures. For the Other Necessary Expense categories, by contrast, the debtor may deduct his actual expenses, no matter how high they are. Our reading of the means test thus gives full effect to "the distinction between 'applicable' and 'actual' without taking a further step to conclude that 'applicable' means 'nonexistent.'" *In re Ross–Tousey*, 368 B.R. 762, 765 (Bkrtcy.Ct.E.D.Wis.2007), rev'd, 549 F.3d 1148 (C.A.7 2008).

*Id.* at 727-28. The Supreme Court also acknowledged the potential for an anomalous result:

> Under our interpretation, "[d]ebtors can time their bankruptcy filing to take place while they still have a few car payments left, thus retaining an ownership deduction which they would lose if they filed just after making their last payment." . . . . Indeed, a debtor with only a single car payment remaining . . . is eligible to claim a monthly ownership deduction.

*Id.* at 729. Simply put, the means test may at times produce odd results. Nonetheless, consistent with the purpose of BAPCPA and the language of the statute, the debtor was not permitted to deduct an expense which he did not have.

It is consistent with the rationale in *Ransom* that a debtor must also have the claimed Other Necessary Expense at the time of filing in order to deduct the actual expense in the means test calculation. It is not sufficient that a debtor simply had the expense at some time prepetition. Accordingly, the Debtor may not include the prepetition payments in Line 25.

Means Test Calculation

For the reasons stated above, the Debtor must include the income received as a bonus and the child support payments in the calculation of current monthly income for purposes of the

means test calculation.[7] In addition, the Debtor may not include as an expense the payments made on a delinquent tax liability which was satisfied prior to the commencement of this bankruptcy case.

The Court notes that several other adjustments to the Debtor's Amended Form 22A have been taken into consideration in the means test calculation. For clarification, these variations from the Debtor's Amended Form 22A are as follows:

1) Although left blank by the Debtor in her Amended Form 22A, the Debtor may deduct $9.66 under the category of "Other Necessary Expenses: life insurance" on Line 27 and $8.40 under the category of "Continued charitable contributions" on Line 40. These amendments were noted in the Motion to Dismiss. In the Debtor's Response, the Debtor admitted to these adjustments by the UST. The Court notes that the inclusion of these amounts benefits the Debtor as they are ultimately deducted from income in the means test calculation.

2) As to Line 34, which reflects "Health Insurance, Disability Insurance, and Health Savings Account Expenses," the Debtor's Amended Form 22A identifies a deduction in the amount of $456.56. In the Motion to Dismiss, the UST contends that, "[b]ased upon the submitted payment advices, the Debtor's health insurance expenses are $228.66 monthly, rather than $456.56 as reported on Debtor's Amended Form 22A (a difference of $227.90)." *See* Motion to Dismiss, Doc. No. 14, ¶21. The Debtor admits to the UST's

---

[7] The Court used the Debtor's claimed amount of $6,730 on Line 3, which includes the bonus income, although it is approximately $33 less than the UST's figure.

allegation in the corresponding paragraph of her Response. *See* Debtor's Response, Doc. No. 17, ¶21. Thus, the amount of $228.66 appears to be correct.[8]

The corrections to the Debtor's Amended Form 22A result in a presumption of abuse.

A presumption of abuse may only be rebutted by demonstrating special circumstances as set forth in §707(b)(2)(B). The Court reviewed and considered Addendum II to Debtor's Pretrial Statement regarding the incentive program at her place of employment. The addendum alone is not sufficient to establish special circumstances such that the Debtor's bonus income should be excluded from the calculation of current monthly income. Furthermore, to the extent this Court construes the Debtor's argument regarding the exclusion of child support payments from current monthly income under §1325(b)(2) as an attempt to establish special circumstances, excluding the child support payments from the calculation would not be sufficient to change the result of the means test calculation for this Debtor. Thus, even if the Court accepted the Debtor's argument regarding child support, the presumption would nonetheless arise. As the Debtor did not demonstrate that additional expenses or adjustments to income are required, she failed to rebut the presumption of abuse. Therefore, dismissal of this case is appropriate unless the Debtor timely converts her bankruptcy case to a case under chapter 11 or chapter 13.

---

[8] This conclusion is bolstered by the Debtor's Addendum III to her Pretrial Statement which lists a deduction for "Health Ins/HAS" in the amount of $229. Furthermore, the Court notes that, even if the Debtor did not admit to a reduction of the expense on Line 34, the presumption of abuse would nonetheless arise.

14

### IV. Conclusion

For the foregoing reasons, this Court finds that a presumption of abuse arises under §707(b)(2). Accordingly, the Motion to Dismiss is granted unless the Debtor timely converts her case. An appropriate order will be entered.

Date: January 18, 2013                                         /s/ Carlota M. Böhm
                                                               Carlota M. Böhm
                                                               United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
Heather A. Sprague, Esq.
John P. Vetica, Esq.
Robert Shearer, Esq.
Karin Lynn Taborski